Filed 11/23/20  Warshawsky v. City of San Diego CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JON M. WARSHAWSKY,  Plaintiff and Appellant,  v.  CITY OF SAN DIEGO,  Defendant and Respondent. | D075269  (Super. Ct. No. 37-2017-00013127-CU-PO-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Gregory W. Pollack, Judge.  Affirmed.

Bentley & More, Gregory L. Bentley, Matthew W. Clark, Clare H. Lucich; Law Offices of Ronald G. Gabler and Ronald G. Gabler, for Plaintiff and Appellant.

Mara W. Elliott, City Attorney, George F. Schaefer, Assistant City Attorney, Catherine A. Richardson, Chief Deputy City Attorney, and Erin D. Kilcoyne, Deputy City Attorney, for Defendant and Respondent.

# I.

## INTRODUCTION

One evening while driving in the City of San Diego (City), plaintiff Jon Warshawsky approached an intersection in his vintage convertible when a woman driving under the influence approached the same intersection from the opposite direction and struck the center median with her car. The woman's car jumped the median and swerved into Warshawsky's car, causing severe injuries to Warshawsky and killing his passenger. Warshawsky brought this lawsuit against the City, claiming that the roadway constituted a dangerous condition of public property (Gov. Code, § 835 et seq.)[1]

The City moved for summary judgment, in part on the ground that the affirmative defense of design immunity under section 830.6 applied to bar Warshawsky's claims. The trial court agreed and granted the motion. On appeal, Warshawsky contends that the trial court erred in granting summary judgment. He argues that the City failed to establish that it is entitled to design immunity and that even if the City did meet its burden, it subsequently lost its design immunity due to changed conditions. Alternatively, Warshawsky maintains that the City is independently liable for failing to warn drivers of the dangerous condition. We disagree and affirm the judgment.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

Consistent with our standard of review, we recite the historical facts in the light most favorable to Warshawsky as the nonmoving party.

---

[1] Unless otherwise specified, all subsequent statutory references are to the Government Code.

(See *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 (*Saelzler*); *Light v. Dept. of Parks & Recreation* (2017) 14 Cal.App.5th 75, 81.)

On a clear evening in March 2016, Warshawsky was driving with a passenger in his vintage 1956 Porsche Speedster convertible westbound on Pomerado Road in the City of San Diego. As he approached the intersection of Pomerado Road and Caminito Alto, a young woman, Hyun Jeong Choi, was driving eastbound on the same road under the influence of marijuana. Choi admitted that because of her intoxication, her hearing was impaired, she felt she had no control over her body, and she had "no perception of the road."

As she approached the intersection of Pomerado Road and Caminito Alto, Choi suddenly swerved out of the travel lane and into a left-turn pocket. She side-swiped some "flexible channelizer" posts and collided with a raised center island median. The severity of the collision with the median deflated her left tire, causing her car to drag and rotate into the oncoming westbound lane, directly into the path of Warshawsky's car. Warshawsky braked and veered to the right in an attempt to avoid the collision, but Choi's car hit the side of Warshawsky's car near the driver's-side door.

In his operative complaint, Warshawsky alleges that he suffered "considerable injuries" and that his passenger died as a result of the collision.[2] Choi faced criminal charges and the parties represent in their briefing that she was convicted after judgment was entered in this case.

A. *Warshawsky's Complaint*

In his operative complaint, Warshawsky alleged multiple causes of action against several parties, including the physician who wrote Choi's

---

[2] Neither party identifies any evidence in the record establishing that Warshawsky or his passenger were injured in the collision. However, the City appears to concede, at least for purposes of its motion for summary judgment, that Warshawsky did suffer an injury in the collision.

medical marijuana prescription and the dispensary that provided the marijuana to Choi, but later dismissed both of these parties to focus on the City.

In his first cause of action alleged against the City, Warshawsky alleged that the City "did carelessly and negligently build, maintain, own, operate, manage, inspect, lease, improve, design, construct, and control" the road, which he claimed constituted a dangerous condition that proximately caused his serious injuries.

B.    *The City's motion for summary judgment*

1.    *The City's motion*

In seeking summary judgment, the City contended that Warshawsky could not establish that the intersection was a dangerous condition that proximately caused his injury and even if it were, the City lacked adequate notice of the dangerous condition.

Alternatively, the City argued that even if the design or condition of the intersection caused Warshawsky's injury, the City was entitled to immunity under section 830.6. In a supporting brief, the City noted that to establish the defense of design immunity, a public entity is required to establish three elements:  1) a causal relationship between the plan or design and the accident; 2) discretionary approval of the plan or design prior to construction; and 3) substantial evidence supporting the reasonableness of the plan or design.

In its brief, the City contended that the causal connection element was met by relying on Warshawsky's allegation in his complaint that the intersection at which the collision occurred constituted a dangerous condition because of a design feature.

4

With respect to the discretionary approval element, the City produced evidence showing that in 1988, the City Engineer signed the plans for Pomerado Road, which were also approved by the City Council. Additionally, Pomerado Road was resurfaced and restriped in 2014, which the City claimed was also based on a design approved by a City engineer. Finally, the City relied on the declaration of Richard Haygood, a licensed traffic engineer, together with the declarations of City traffic engineers, to demonstrate the reasonableness of the plans.

2. *Warshawsky's opposition*

In his opposition, Warshawsky argued that the City was not entitled to summary judgment based on its affirmative defense of design immunity for the 2014 plan because the evidence submitted by the City showed that the 2014 plan was not signed by the City engineer, which Warshawsky contended is required under state law to demonstrate approval. Although Warshawsky did not dispute the City's showing of design immunity for the 1988 plan, he argued that the City lost its immunity due to numerous changed conditions at the intersection, including (1) the elimination of a painted white stripe next to the median; (2) a narrowing of the travel lane; (3) increased traffic volume; and (4) a documented history of vehicles traveling over the speed limit at that location. Alternatively, Warshawsky argued that even if design immunity did apply, the City could be independently liable for failing to warn motorists of the dangerous condition of the intersection, which he contended constituted a "trap" for unsuspecting drivers.

To support his opposition, Warshawsky relied, inter alia, on an expert declaration from an accident reconstructionist who opined that, based on his study of the evidence, "[a]ll things remaining equal, had the raised center median and bordering Portland-cement concrete curbing not been present,

5

the collision between the eastbound Choi vehicle and the westbound Warshawsky vehicle would not have occurred." Warshawsky also submitted a declaration from an engineer that faulted the City for installing six-inch curbs on the median; the engineer contended that this was contrary to applicable design guidelines which he claimed called for shorter curbs on center medians located on high-traffic streets. The engineer also faulted the City's striping design around the median and choice of warning markers on the median.

To supplement his claims that the intersection was dangerous, Warshawsky also submitted declarations from nearby residents, who generally claimed that they often saw cars speeding on Pomerado Road, that they had observed damage to the median that they presumed was the result of collisions, and that they had heard "loud, crashing noises" coming from the intersection on multiple occasions.

3.  *The City's reply*

The City filed a reply in which it noted that Warshawsky's reliance on an expert engineer who believed a different median design was preferable was insufficient to defeat design immunity, which simply requires a showing the implemented design was reasonable. The City faulted Warshawsky for relying on the absence of the engineer's signature on the 2014 plans as evidence that the plan had not been approved, given the ample evidence in the record showing that the plan was in fact approved.

With respect to whether the City lost its design immunity due to changed conditions on the roadway, the City argued that Warshawsky failed to demonstrate any changed conditions and also failed to show that the alleged changes were anything more than de minimis changes that had no effect on the safety of the roadway. Additionally, the City faulted

6

Warshawsky's reliance on a statement by a police officer that the area of the intersection is "curved and darker," given the officer's unequivocal statements to the contrary, i.e, that the median was plainly visible and not hidden from drivers. Thus, the City argued, Warshawsky could not establish a triable issue of material fact regarding whether the intersection was a "trap" that gave rise to a duty to warn drivers. The City submitted voluminous objections to the evidence submitted by Warshawsky in support of his opposition.

To support its reply, the City submitted additional declarations from its engineers and other evidence to rebut the claims made by Warshawsky. Warshawsky subsequently objected to the City's attempt to submit this evidence for the first time in reply.

C. *The trial court's ruling*

The court held a hearing on the motion. At the hearing, Warshawsky conceded that the City had met "the initial threshold of design immunity" for the 1988 plan. He also conceded that he was not challenging the first element of design immunity, which requires a showing that there was a causal relationship between the design and the plaintiff's injury, with respect to the 2014 plan. However, he argued that even if the City was entitled to design immunity, such immunity "doesn't last forever" and the City had lost its immunity due to changed conditions and the history of accidents in the area.

At the conclusion of the hearing, the trial court granted the City's motion for summary judgment. In its written order, the court sustained Warshawsky's objections to the evidence submitted by the City in reply, with the exception of one document, which the court concluded was "provided to show that Plaintiff had misstated testimony" and was therefore admissible.

7

The court also sustained many of the City's objections to Warshawsky's evidence, including an objection to the expert declaration from the accident reconstructionist, on the ground that the declaration contained improper legal conclusions, and the objections to the declarations of the nearby residents offering their impressions of the safety of the roadway.

On the merits, the trial court found that the City had established that it was entitled to design immunity and that Warshawsky had failed to demonstrate a triable issue of material fact. The court cited case law directly refuting Warshawsky's contention that the engineer's signature must appear on the plans in order to establish that the plans were approved for purposes of design immunity. The trial court also noted that although Warshawsky's expert engineer opined that the median should have been designed differently, this declaration was insufficient to defeat design immunity because " 'as long as reasonable minds can differ concerning whether a design should have been approved, then the governmental entity must be granted immunity.' " Rejecting Warshawsky's claim that changed conditions defeated the City's original design immunity, the court explained that the dearth of accidents at the intersection undermined the claim that the intersection had become dangerous given the increased speed and traffic on the road. Similarly, the court rejected Warshawsky's claim that the intersection constituted a "trap," relying on a police officer's statement that the median was plainly visible.

The court subsequently entered judgment in favor of the City. Warshawsky timely appealed the judgment.

8

## III.

## DISCUSSION

A.   *The law governing summary judgment*

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)  "[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. . . .   There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850, fn. omitted.)

"[H]ow the parties moving for, and opposing, summary judgment may each carry their burden of persuasion and/or production depends on *which* would bear *what* burden of proof at trial." (*Aguilar*, *supra*, 25 Cal.4th at p. 851.)  Here, both parties agree that design immunity under section 830.6 is an affirmative defense, which the City bears the burden of establishing.  (See, e.g., *Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 66 (*Cornette*).)

"A defendant moving for summary judgment must show either (1) that one or more elements of the plaintiff's cause of action cannot be established, or (2) 'that there is a *complete* defense to that cause of action.'  [Citation.]  The burden on a defendant moving for summary judgment based upon the assertion of an affirmative defense is heavier than the burden to show one or more elements of the plaintiff's cause of action cannot be established.  Instead

9

of merely submitting evidence to negate a single element of the plaintiff's cause of action, or offering evidence such as vague or insufficient discovery responses that the plaintiff does not have evidence to create an issue of fact as to one or more elements of his or her case [citation], 'the defendant has the initial burden to show that undisputed facts support each element of the affirmative defense' [Citations.]  The defendant must demonstrate that under no hypothesis is there a material factual issue requiring trial.  [Citation.]  If the defendant does not meet this burden, the motion must be denied.  Only if the defendant meets this burden does 'the burden shift [ ] to plaintiff to show an issue of fact concerning at least one element of the defense.' [Citation.]" (*Anderson v. Metalclad Insulation Corp.* (1999) 72 Cal.App.4th 284, 289-290.)

If the defendant "carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar*, *supra*, 25 Cal.4th at p. 850.)  "The plaintiff . . . shall not rely upon the allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto."  (Code Civ. Proc., § 437c, subd. (p)(2).)

"We review the record and the determination of the trial court de novo." (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003.)  "In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [the plaintiff's] evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzler*, *supra*, 25 Cal.4th at p. 768.)

10

B.      *The trial court properly determined that the City established, as a matter of law, its affirmative defense of design immunity*

1.      *Principles of law governing design immunity*

Section 835 establishes that *except as provided by statute*, "a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:  [¶]  (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or  [¶]  (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

One of the statutory exceptions to this general rule of liability is found in section 830.6, which creates the affirmative defense of "design immunity." Section 830.6 provides, in relevant part:  "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved, if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor."

11

"The rationale for design immunity is to prevent a jury from second-guessing the decision of a public entity by reviewing the identical questions of risk that had previously been considered by the government officers who adopted or approved the plan or design. [Citation.] ' " '[T]o permit reexamination in tort litigation of particular discretionary decisions where reasonable men may differ as to how the discretion should be exercised would create too great a danger of impolitic interference with the freedom of decision-making by those public officials in whom the function of making such decisions has been vested.' " [Citation.]' [Citation.]" (*Cornette*, *supra*, 26 Cal.4th at p. 69.)

To establish the affirmative defense of design immunity, a public entity must establish three elements: "(1) a causal relationship between the plan or design and the accident; (2) discretionary approval of the plan or design prior to construction; and (3) substantial evidence supporting the reasonableness of the plan or design." (*Cornette*, *supra*, 26 Cal.4th at p. 69.)

The first element, requiring a causal relationship between the plan or design and the accident, may be established by relying on the allegations of the complaint. (*Alvis v. County of Ventura* (2009) 178 Cal.App.4th 536, 550 (*Alvis*).) The first element may be resolved as an issue of law when the facts are undisputed. (*Grenier v. City of Irwindale* (1997) 57 Cal.App.4th 931, 940 (*Grenier*).)

Similarly, the second element of discretionary approval may be resolved as an issue of law if the material facts pertaining to the element are undisputed. (*Grenier*, *supra*, 57 Cal.App.4th at p. 940.) The element "simply means approval in advance of construction by the legislative body or officer exercising discretionary authority." (*Ramirez v. City of Redondo Beach* (1987) 192 Cal.App.3d 515, 526 (*Ramirez*).) "A detailed plan, drawn up by a

12

competent engineering firm, and approved by a city engineer in the exercise of his or her discretionary authority, is persuasive evidence of the element of prior approval." (*Grenier*, at pp. 940-941.)

The third element—substantial evidence supporting the reasonableness of plan or design—always presents a question of law. (See *Cornette*, *supra*, 26 Cal.4th at p. 72 ["Section 830.6 clearly makes the resolution of the third element of design immunity, the existence of substantial evidence supporting the reasonableness of the adoption of the plan or design, a matter for the court, not the jury."].) The statute provides immunity when there is any substantial evidence of reasonableness, even if contradicted. (*Grenier*, *supra*, 57 Cal.App.4th at p. 940.)

2.   *Application*

As framed by the parties, the City alleges the existence of two sets of plans for the roadway at issue in this case: the initial 1988 design, which included the center median, and the subsequent change in striping in 2014. In its motion for summary judgment, the City asserted that it is entitled to design immunity for both plans. Warshawsky does not dispute this framing and, accordingly, we consider the issue of design immunity as applied to each of the two plans, which we hereinafter refer to as the "1988 Plan" and the "2014 Plan."

a.   *1988 Plan*

Regarding the 1988 Plan, Warshawsky expressly conceded at the hearing on the motion for summary judgment that the City had met "the initial threshold of design immunity." On appeal, Warshawsky does not challenge the application of design immunity to the 1988 Plan. Accordingly, by conceding the issue in the trial court and similarly failing to raise the issue on appeal, Warshawsky has abandoned it and we presume that the trial

13

court's ruling with respect to the 1988 Plan is correct.  (See, e.g., *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6.)

      b.    *2014 Plan*

Turning to the 2014 Plan, Warshawsky conceded in the trial court that he was not disputing the first element of design immunity, premised on the causal relationship between the plan and his injury.  On appeal, he does not challenge the first or the third element—the reasonableness of the design— and instead focuses his challenge on the second element, which requires evidence that the plan was approved prior to construction by a legislative body or a city official.

In support of the motion for summary judgment, the City submitted a declaration from a senior traffic engineer, Brian Genovese, who stated that he had "reviewed and approved the design plans for the striping and signage on Pomerado Road between Semillon Boulevard to Spring Canyon Road . . . ." Genovese further declared that, under a formal delegation of authority from the City Engineer, he had discretionary authority to approve the 2014 Plan. The City included a copy of the approved plans as an exhibit in support of its motion.  This evidence is sufficient to demonstrate the discretionary approval element.  (See, e.g., *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1263 (*Laabs*) [evidence that an engineer employed by a public entity "reviewed and approved" construction plans established discretionary approval element as a matter of law].)

In arguing that the trial court erred in finding that the City established its discretionary approval of the plan, Warshawsky did not directly dispute this evidence, but instead argued that the approval was invalid because the 2014 Plan was not signed by Genovese.  As Warshawsky argued in the trial court, state law requires that engineering plans be signed by an engineer.

14

(Bus. & Prof. Code, § 6735 ["All final civil engineering calculations and reports shall bear the signature and seal or stamp of the licensee, and the date of signing and sealing or stamping."].)  He also points to the City Engineer's delegation of authority memorandum, which delegates authority to traffic engineers for "review and *signing* of plans and specifications." (Italics added.)  Warshawsky further relies on the deposition testimony of City employees acknowledging the general practice of signing final engineering plans.  This evidence, Warshawsky argues, establishes that because the 2014 Plan was not signed, it was not approved for purposes of the defense of design immunity.

This same claim has been rejected by a California appellate court in *Bane v. State of California* (1989) 208 Cal.App.3d 860 (*Bane*) (disapproved on other grounds in *Cornette, supra,* 26 Cal.4th at p. 74, fn. 3.)  In *Bane,* the trial court found that the State of California was entitled to design immunity after plaintiffs were injured on a state highway.  (*Bane,* at p. 863.)  On appeal, the plaintiffs argued that because the plans for the highway were approved but not signed, the state was not entitled to design immunity.  (*Id.* at pp. 866-867.)  The appellate court rejected this contention, holding that compliance with Business and Professions Code section 6735 is not a prerequisite to establishing design immunity under section 830.6 of the Government Code. (*Id.* at p. 868.)  As the court recognized, "[w]hen design drawings are not signed . . . the public entity has a more difficult time demonstrating that the plans were 'approved.'  Nevertheless, if the public entity can prove the requisite approval with oral testimony, as it did here, the approval element of design immunity is met."  (*Id.* at p. 869.)

We agree with the reasoning of the *Bane* court.  Section 830.6 does not dictate any specific form or technical requirements to establish the necessary

15

approval by the public entity.  While the City's usual practice is to have an appropriate person sign approved plans, and state law suggests that a signature is required on final plans, nothing in the record suggests that the absence of a signature requires a finding that the plan was not approved, for purposes of establishing design immunity.  Although such a signature would have made it easier for the City to establish approval, the City could also rely on additional evidence to prove that the plan was approved.  The City did so, submitting direct evidence, in the form of a declaration, to prove that the 2014 Plan was approved.

Warshawsky contends that a triable issue of material fact exists with respect to this element, but he presented no evidence suggesting that the 2014 Plan was not approved beyond pointing to the absence of a signature.  Because we agree with the *Bane* court that no signature is required for purposes of establishing design immunity, Warshawsky fails to establish a triable issue of material fact as to whether the City met its burden of establishing the required elements of design immunity under section 830.6 for the 2014 Plan.

Based on Warshawsky's concession that the City met its burden of establishing design immunity for the 1988 Plan and his failure to demonstrate the existence of a triable issue of material fact with respect to the application of design immunity for the 2014 Plan, we conclude that the trial court did not err in finding that the City met its burden of establishing the affirmative defense of design immunity.

C.     *The trial court correctly found that Warshawsky failed to establish a triable issue of material fact with respect to his claim that the City lost its design immunity due to changed conditions.*

The trial court found that the City established its defense of design immunity under section 830.6 and, as discussed *ante*, Warshawsky fails to

16

show any error by the trial court in this regard. This, however, does not end our inquiry. Warshawsky contends that even if the City was entitled to design immunity, triable issues of material fact exist as to whether the City lost that immunity due to changed conditions at the intersection. We disagree.

1. *Principles of law governing loss of design immunity due to changed conditions*

As amended in 1979, section 830.6 recognizes that even if a public entity establishes its initial defense of design immunity, it may lose that immunity upon "notice that constructed or improved public property may no longer be in conformity with a plan or design or a standard which reasonably could be approved by the legislative body or other body or employee." (See also *Cornette, supra*, 26 Cal.4th at p. 71.)

To demonstrate a loss of design immunity due to changed conditions, the plaintiff must "establish three elements: (1) the plan or design has become dangerous because of a change in physical conditions; (2) the public entity had actual or constructive notice of the dangerous condition thus created; and (3) the public entity had a reasonable time to obtain the funds and carry out the necessary remedial work to bring the property back into conformity with a reasonable design or plan, or the public entity, unable to remedy the condition due to practical impossibility or lack of funds, had not reasonably attempted to provide adequate warnings." (*Cornette, supra*, 26 Cal.4th at p. 72.)

"[A]fter a defendant has shown the applicability of . . . design immunity to the plaintiff's claims, the plaintiff bears the burden of establishing each of the three elements of the loss of the immunity. [Citation.] . . . Consistent with their burden at trial of establishing the elements of [defendant's] loss of the design immunity, plaintiffs [bear] the burden of production in opposition

17

to the motion for summary judgment 'to make a prima facie showing of the existence of a triable issue of material fact' [citation] with respect to the loss of the design immunity.  Since it is necessary to establish all three elements of the loss of the design immunity [citation], plaintiffs need[] to make a prima facie showing of the existence of a triable issue of fact with respect to each of those elements to overcome [defendant's] motion for summary judgment." (*Mirzada v. Department of Transportation* (2003) 111 Cal.App.4th 802, 806-807 (*Mirzada*).)

The questions involved in loss of design immunity are necessarily distinct from those involved in the public entity's original consideration of the reasonableness of the design.  (*Cornette, supra*, 26 Cal.4th at p. 73.)  To find a loss of design immunity, " 'the trier of fact will not simply be reweighing the same technical data and policy criteria which went into the original plan or design.  Rather, there will then be objective evidence arising out of the actual operation of the plan-matters which, of necessity, could not have been contemplated by the government agency or employee who approved the design.' " (*Ibid*.)

Thus, the claimed change of physical conditions "cannot be based on the same technical data or policy decisions that went into the original plan or design." (*Alvis, supra*, 178 Cal.App.4th at p. 555.) Similarly, a change in design standards after the design at issue was approved does not constitute a "changed condition" resulting in a loss of design immunity.  (*Dammann v. Golden Gate Bridge, Highway & Transportation Dist.* (2012) 212 Cal.App.4th 335, 354.)

2.     *Application*

Warshawsky asserts that he established the existence of triable issues of material fact regarding the loss of design immunity, relying on several purported changed conditions from the original 1988 Plan.

Warshawsky relies on the increased traffic volume, peaking at almost 19,000 vehicles per day, and high speeds of around 51 miles per hour, on the roadway, as changed conditions. However, the evidence shows that when the roadway was designed in 1988, the design was meant to handle "at least 30,000 vehicles per day" and speeds up to 55 miles per hour. Thus, what Warshawsky contends is a change of conditions in this respect arises from the same conditions contemplated by the City at the time the roadway was designed and approved in 1988. In other words, he essentially seeks to second-guess the City's original design decision in 1988 that the roadway's design could accommodate the volume and speed of traffic at the time of his accident. "It is that sort of second-guessing of the [City's] design choices that section 830.6 was enacted to prevent."[3] (*Alvis, supra,* 178 Cal.App.4th at p. 556.) When an increase of traffic volume remains within the design capacity of a roadway, "[a]n increase in traffic alone . . . is insufficient to establish the loss of the design immunity. Without more, an increase in traffic proves nothing." (*Mirzada, supra,* 111 Cal.App.4th at p. 808.)

Warshawsky's other claims of changed conditions arise mainly from the implementation of the 2014 Plan that changed the striping painted on the roadway and resulted in a narrowing of the travel lanes. In essence, he

---

[3]     Warshawsky's claim of changed conditions in this respect is arguably a challenge to the reasonableness of the 1988 Plan, the third element of design immunity. However, Warshawsky conceded in the trial court that he was not challenging the application of design immunity to the 1988 Plan and does not directly raise that claim on appeal.

claims that the City lost its design immunity for the 1988 Plan because the 2014 Plan—for which we have concluded the City is entitled to design immunity—created a dangerous condition. To the extent that Warshawsky is arguing that the City is liable for a dangerous condition created by the 2014 Plan, his argument contradicts the purpose of section 830.6, which establishes that the City cannot be held liable for the roadway designed in accordance with the 2014 Plan.

Even accepting Warshawsky's claim that some conditions on the roadway have changed since 1988 because of the 2014 Plan, and assuming that those changes could result in the loss of all design immunity, he does not raise any triable issue of material fact as to whether those changed conditions *caused* the roadway to become dangerous. (See, e.g., *Laabs*, *supra*, 163 Cal.App.4th at p. 1268 [plaintiff must show "that the plan or design has become dangerous *because of* a change in physical conditions" (italics added)].)

The requirement that a plaintiff show a causal link between the changed conditions and the creation of a dangerous condition was discussed in *Weinstein v. Department of Transportation* (2006) 139 Cal.App.4th 52 (*Weinstein*). In *Weinstein*, the plaintiffs were injured when another car crossed the roadway and struck their vehicle head on. (*Id.* at p. 54.) Plaintiffs alleged that the increase in traffic and corresponding increase in accidents constituted changed conditions that made the roadway dangerous in the absence of a median barrier. (*Id.* at pp. 60-61.) While recognizing that the increased traffic and accidents constituted changed conditions, the court nevertheless concluded that the public entity had not lost design immunity. (*Ibid.*) The court reasoned that plaintiffs failed to show that the changed conditions rendered the existing design of the roadway dangerous because

20

the design was now "inconsistent with state standards or would have rendered it unreasonable for a public entity to approve the design of the roadway." (*Ibid.*) In other words, unless the changed conditions as applied to the existing design would undermine the reasonableness of the original design, those changed conditions do not result in a loss of design immunity.

Warshawsky similarly fails to demonstrate how the purported changed conditions caused the accident location to become dangerous in relation to the 1988 Plan. Warshawsky submitted a declaration from an expert engineer opining that the roadway was dangerous as designed in 1988 and relies on "accidents and issues" occurring as long ago as 1995 to demonstrate that there was "a problem with the subject intersection." Thus, the expert opined that the road was dangerous *not* because of any changed conditions, but based on the original 1988 design of the raised median with a specific type of curb.[4] However, as noted, Warshawsky conceded in the trial court that he was not challenging the applicability of design immunity to the 1988 Plan.

_____

[4] Warshawsky's expert engineer relies primarily on design guides from 2003 and 2012 to assert that the City should have installed a different type of curb at the median. However, the original design of the curb on the median cannot constitute a changed condition resulting in a loss of design immunity. Further, a change in industry practice or technology after a design is approved and installed is not a "changed condition" resulting in a loss of design immunity. (See, e.g. *Dammann v. Golden Gate Bridge, Highway & Transportation Dist.*, *supra*, 212 Cal.App.4th at p. 354.) Although Warshawsky also relies in part on guidelines from 1964 and 1988, those guidelines do not include the nuanced distinction between "Type B4 curb" and "Type B2 curb" that Warshawsky's expert contends is critical to the safety of this roadway. Moreover, the question of whether the City's 1988 Plan, which incorporated a Type B2 curb, should have instead included a Type B4 curb, goes to the issue of whether the 1988 plan was reasonable, an issue conceded by Warshawsky in the trial court and not raised on appeal.

Most tellingly, the expert offered no opinion that these changed conditions caused the roadway to become dangerous. At most, he simply identified the alleged changed conditions without including any causal link to current dangerousness when he declared "the increased traffic volume, the consistently high speed of the roadway, the missing necessary pavement striping, and the improper object markers, all constitute changed conditions from the original design in 1988."[5] Thus, Warshawsky offered no evidence that these changes caused the roadway to become dangerous.

Warshawsky failed to produce evidence establishing a triable issue of material fact with respect to whether the roadway design had become dangerous due to changed physical conditions. Thus, we need not address the other two elements of the loss of design immunity, i.e., whether the City was on actual or constructive notice of a dangerous condition and whether there was sufficient time to remedy the alleged dangerous condition. (*Mirzada, supra*, 111 Cal.App.4th at p. 810.)

D.  *Warshawsky failed to meet his burden of establishing a triable issue of material fact regarding his independent claim that the City's failure to warn caused his injuries.*

Warshawsky argues that even if the City was entitled to design immunity and did not subsequently lose that design immunity due to changed conditions, the City may still be liable for failing to warn motorists

---

[5]     The trial court sustained the City's objection to this conclusion as constituting an improper legal conclusion. Our discussion of this conclusion is not intended to suggest that the trial court should have admitted the conclusion, but merely to show that Warshawsky offered no evidence demonstrating that changed conditions caused the roadway to become dangerous. As we discuss *post*, we conclude that the trial court's evidentiary rulings, even if erroneous, had no effect on the outcome of the City's motion for summary judgment.

of the dangerous condition of the intersection, which Warshawsky characterizes as a "trap." While we agree that the City could generally be liable under an independent theory based on a failure to warn, we disagree with Warshawsky that he established a triable issue of material fact under this theory.

In *Cameron v. State of California* (1972) 7 Cal.3d 318 (*Cameron*), the California Supreme Court noted that the design immunity conferred by section 830.6 is not absolute immunity. Reviewing case law, the *Cameron* court held that "where the state is immune from liability for injuries caused by a dangerous condition of its property because the dangerous condition was created as a result of a plan or design which conferred immunity under section 830.6, the state may nevertheless be liable for failure to warn of this dangerous condition where the failure to warn is negligent and is an independent, separate, concurring cause of the accident." (*Id.* at p. 329.) The Supreme Court explained that when a public entity is actively negligent in creating a dangerous condition *and* passively negligent in failing to warn of that dangerous condition, the public entity may be entitled to immunity under section 830.6 for its active negligence but nevertheless liable for its passive negligence. (*Id.* at pp. 328-329; see also *Flournoy v. State of California* (1969) 275 Cal.App.2d 806, 811-812.)

Relying on *Cameron*, the court in *Grenier v. City of Irwindale* (1997) 57 Cal.App.4th 931 similarly recognized that "[t]he failure to warn of a trap can constitute independent negligence, regardless of design immunity." (*Grenier*, at p. 945.)

Warshawsky asserts that the intersection of Pomerado Road and Caminito Alto was a "trap" because the City "failed to install adequate warning of the approaching hazard before the accident at issue in 2016."

23

Thus, Warshawsky contends, there is "a triable issue of fact as to whether the City created a trap and failed to warn of that trap."

Even if we accept, solely for purposes of argument, Warshawsky's assertion that triable issues of material fact exist as to whether the City "created a trap and failed to warn of that trap," those triable issues would not be enough to survive summary judgment. Simply asserting that the City was passively negligent in failing to warn is not sufficient to create a triable issue of material fact because "[s]ome acts or omissions accurately classified as 'negligent' (i.e., a breach of the defendant's duty of care) do not necessarily have a causal role in motor vehicle accidents." (*Bermudez v. Ciolek* (2015) 237 Cal.App.4th 1311, 1321.) As the Supreme Court clarified in *Cameron*, Warshawsky must also show that this alleged failure to warn "is an independent, separate, concurring cause of the accident." (*Cameron, supra*, 7 Cal.3d at p. 329.)

Under the general principles applicable to the theory of negligence, where a plaintiff alleges two or more causes of his injury, a plaintiff must show that the alleged breach of a legal duty was an independent concurring cause of injury by establishing that the alleged negligence was a substantial factor in causing plaintiff's injury. (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 352, fn. 12 ["In cases where concurrent independent causes contribute to an injury, we apply the 'substantial factor' test of the Restatement Second of Torts, section 423, which subsumes traditional 'but for' causation."]; *Mitchell v. Gonzales* (1991) 54 Cal.3d 1041, 1049 ["where there are concurrent [independent] causes . . . the defendant's conduct is a cause of the event [when] it is a material element and a substantial factor in bringing it about."]; *Yanez v. Plummer* (2013) 221 Cal.App.4th 180, 187.) "In other words, [the] plaintiff must show some

24

substantial link or nexus between omission and injury." (*Saelzler*, *supra*, 25 Cal.4th at p. 778.)

Warshawsky has not met his burden to establish a triable issue of material fact with respect to the element of causation. The undisputed evidence produced by the City demonstrates that when Choi struck the median and subsequently collided with Warshawsky's car, she had "no perception of the road," given her level of intoxication. She claimed that she did not "have any idea what was going on" while she was driving. In an expert declaration submitted by the City, a toxicologist opined that a person driving under the influence of marijuana, like Choi, lacks the ability to focus on objects and respond and react while driving. This evidence establishes that any alleged failure to warn did not contribute to the collision because even if the City had installed adequate signage, Choi was in no condition to observe and react to the warning signs.

In opposition, Warshawsky offered no evidence suggesting that the City's failure to warn had any effect on Choi's driving, given her intoxication. Instead, Warshawsky's expert accident reconstruction engineer merely opined that the cause of the collision was the presence of the median.[6] This opinion is silent as to any effect of the alleged failure to warn on Choi's actions and Warshawsky offered no other evidence regarding the effect of the City's alleged failure to warn drivers of the alleged dangerous condition present at the intersection and any causal link to the collision giving rise to

---

[6] On appeal, as discussed *post*, Warshawsky contends that the trial court erred in sustaining the City's objection to this declaration.

his injuries.[7]  Thus, even if the trial court had not sustained the City's objection to that declaration, Warshawsky failed to introduce any evidence as to causation or otherwise rebut the City's showing that any failure to warn did not substantially contribute to the collision that resulted in Warshawsky's injury.

On appeal, Warshawsky faults the City for relying on Choi's intoxication and asserts that her failure to drive with due care does not negate the question of whether the roadway was a dangerous condition.  The City does not dispute this point.  As discussed *ante*, a plaintiff's injury can be the result of multiple concurrent causes:  as alleged by Warshawsky, his injury was the result of both Choi's reckless driving *and* the City's design of the roadway.  If both the City and Choi were negligent, Choi's negligence would not negate the City's liability for creating a dangerous condition that contributed to Warshawsky's injury.  However, as we have already concluded, the City is immune from liability in this regard under its affirmative defense of design immunity.

Regardless, whether the City's alleged active negligence in designing the intersection—for which it is entitled to immunity—contributed to Warshawsky's injury is a question entirely distinct from the issue of whether

---

[7]    Warshawsky claims that triable issues of material fact exist with respect to the City's alleged failure to warn, but does not detail precisely what the City should have done to fulfill its duty.  As the City notes on appeal, any claim premised on the City's failure to include certain signage at the intersection would likely fall within the design immunity defense.  (See, e.g., *Compton v. City of Santee* (1993) 12 Cal.App.4th 591, 600; see also §§ 830.4, 830.8.)  Regardless, as we discuss, we do not have to decide whether a triable issue of material fact exists regarding a breach of the duty to warn because we conclude that, even assuming that the City failed to warn drivers, Warshawsky has not established that any breach of the duty to warn caused his injuries.

the City's alleged passive negligence in failing to warn drivers of the "trap" that Warshawsky alleges to exist at the intersection contributed to his injury. Regarding the latter issue, Choi's intoxication is relevant to the issue of whether the alleged failure by the City to warn of the purported "trap" was a cause of the collision. The undisputed evidence established that because Choi was entirely unaware of her surroundings at the time of the collision due to her intoxication, the City's alleged failure to warn of the alleged dangerous condition had no material effect on Choi's driving. Thus, the City correctly relies on evidence of Choi's intoxication because that evidence entirely undermines Warshawsky's argument that the City's failure to warn caused Choi to strike the median.

Because any claim that the City's failure to warn would be entirely theoretical, in the absence of any actual evidence, Warshawsky failed to demonstrate any triable issue of material fact as to the element of causation pertaining to his assertion that the City was negligent in failing to warn of a dangerous condition. (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 969.) Warshawsky thus fails to demonstrate that the City was not entitled to summary judgment.

E.    *The trial court did not abuse its discretion in making evidentiary rulings regarding the admissibility of evidence*

Warshawsky challenges a number of the trial court's evidentiary rulings. As part of its order, the trial court sustained many of the City's objections to Warshawsky's evidence submitted in opposition to the motion for summary judgment. We see no error by the trial court.

Preliminarily, Warshawsky contends that the trial court erred in sustaining the objections because the City failed to timely submit a proposed order in compliance with rule 3.1354(c) of the California Rules of Court. Courts generally agree that it is within the trial court's discretion to refuse to

27

consider evidentiary objections due to a failure to fulfill the formatting requirements under rule 3.1354. (See generally *Hodjat v. State Farm Mut. Autmobile Ins. Co.* (2012) 211 Cal.App.4th 1, 7-9.) But here, the court *did not* refuse to consider the objections. Once a trial court disregards any formatting deficiencies with respect to written evidentiary objections and the deficiency is raised on appeal, "[w]hether the objections complied with the rules of court is of no moment at this juncture." (*Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1378.)

Warshawsky does not address the proper standard of review to apply to his claim that the trial court erred in sustaining the City's evidentiary objections. The appropriate standard of review is subject to debate, with most courts agreeing that the typical abuse of discretion standard applies while other courts suggest that a trial court's evidentiary rulings made as part of a summary judgment order are reviewed de novo. (See generally *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535.) We need not decide which standard applies because we conclude that even if the court erred in sustaining the objections, a reversal of the judgment is not warranted because Warshawsky fails to demonstrate that without the alleged erroneous exclusion of evidence, the outcome of the proceeding would have been different. (Evid. Code, § 354; *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 282.)

First, Warshawsky contends that the trial court erred in sustaining an objection to a single paragraph from a declaration by his expert engineer opining that the roadway constituted a dangerous condition, on the ground that the engineer was offering an improper legal conclusion. However, the issues being considered on appeal regarding whether the City is entitled to design immunity, or lost that immunity, presuppose that the roadway *is* a

dangerous condition.[8]  Similarly, as discussed *ante*, Warshawsky's claim that the City is independently liable for failing to warn of a dangerous condition fails even if we assume that the roadway was dangerous.  Thus, any excluded evidence submitted by Warshawsky to support the conclusion that the roadway constituted a dangerous condition is irrelevant.

Second, Warshawsky challenges the trial court's exclusion of the opinion of an accident reconstruction expert on the cause of the accident.  Again, Warshawsky's claim that the accident was caused by the median and roadway design is not in dispute for purposes of this appeal, but rather, forms the basis for the trial court's finding that the first element of design immunity was satisfied.

Next, Warshawsky contends that the trial court erred in excluding numerous declarations from residents living near the site of the accident in which they state their impression that the roadway was dangerous and discuss their complaints to the City.  According to Warshawsky, this testimony is "admissible to prove *notice* to the City about problems at the subject intersection."  Whether the City had adequate notice of the alleged dangerous condition of the roadway is relevant to the question of whether the City lost its design immunity due to changed conditions.  (See *ante*, III.C.)  As already discussed, we need not reach the question of whether the City had adequate notice because Warshawsky failed to establish a triable issue of material fact with respect to whether any changed conditions caused the

---

8      The City disputes that the roadway constitutes a dangerous condition and asks this court to reach that issue as an alternative basis for affirming the order granting summary judgment.  Given our holding affirming the superior court's order on the basis that the City is entitled to design immunity and any alleged failure to warn of the dangerous condition did not cause Warshawsky's injury, we need not reach this issue.

roadway to become dangerous.  Thus, the exclusion of any evidence relating to the element of notice also had no effect on the outcome.

Finally, Warshawsky asserts that the trial court erred in excluding evidence of City documents and the deposition testimony of City employees that he offered.  The vast majority of these documents concern the collision and traffic history of the roadway at issue, which Warshawsky contends were offered to show that City "had notice and knowledge of potential issues with the intersection, yet had chosen to avoid and ignore the problem with its dangerous City street."  Like the declarations from residents, any admission of evidence regarding notice to the City had no effect on the outcome.  To the extent that Warshawsky challenges the exclusion of other evidence obtained from City employees, he likewise fails to show how any of the excluded evidence would have had any effect on the outcome of this case, based on the dispositive issues discussed in this opinion.

Another document that the trial court excluded concerned the City's post-accident efforts to address issues at the intersection.  The City objected on the basis that Evidence Code section 1151 categorically prohibits the use of evidence of post-occurrence remedial measures to prove culpability.  On appeal, Warshawsky contends that this evidence was admissible to impeach the City's claim that the median was not a dangerous condition and to prove that it was possible to take such precautionary measures to "fix" the intersection.  However, even if we assume that it was error to exclude this evidence, Warshawsky does not show how its admission would have led to a different outcome.  For the limited purpose of establishing design immunity, the City does not dispute that the median was a dangerous condition. Similarly, the ability of the City to take remedial measures—which relates to whether the City should have been found to have lost its design immunity

30

due to changed conditions—is irrelevant because Warshawsky failed to demonstrate any causal link between those alleged changed conditions and his injuries.  Therefore, any exclusion of this evidence was not prejudicial to Warshawsky and does not warrant reversal of the judgment on appeal.

Considered together, the evidence that the trial court excluded was not relevant to the ultimate holding of the trial court or to our reasons for affirming the trial court's order.  Pursuant to section 354 of the Evidence Code, we do not reverse judgments by reason of the erroneous exclusion of evidence absent a showing that the exclusion of the evidence resulted in a miscarriage of justice.  Seeing no prejudice even if we assume, arguendo, that the trial court erred in excluding the evidence, the evidentiary errors that Warshawsky raises do not support a reversal of the judgment.

## IV.

## DISPOSITION

The judgment is affirmed.  City is entitled to its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)


AARON, Acting P. J.

WE CONCUR:



DATO, J.



GUERRERO, J.


31